Mr. Justice James
delivered delivered the opinion of the court.
The Washington Market Company filed its bill, alleging that the United States was first assessed for the cost of the improvement made along B street from Tth to 9th, in front of the property leased by the United States to the market company, and that the whole cost of that work was paid by the United States, upon assessments presented by the Board of Public Works, the predecessors, as it is said, of the Commissioners of the District of Columbia; that afterwards the market company was assessed, not for the whole amount, but for a part of the cost of the same work. It was claimed that the demurrer to the bill admitted that the full cost had been .since paid for this work by the United States, and that that payment extinguished all liability of everybody for the work.
The bill, however, in stating that the whole cost had been paid, referred to what was known as the “ governor’s answer,” naming the pages, not as evidence, in the language of counsel for the complainant, but really as a part of the allegations of the bill. And when we turn to the report or answer so referred to, we do not find that the United States was really charged there with ever paying the full cost of the work on B street from 6th to 14th street, but that one *421 of the items shows that only five-sixths of the cost was charged to the United States, and that a balance corresponding exactly with the amount now charged to the complainant was left unpaid.
It is true that it does not appear from that table or statement of account, thus referred to and incorporated in the bill, just where that pavement lay, whether it lay in front of the property from 1th to 9th streets or not. But it appears that the full cost of the work was not charged to the United States, so that the bill does not show, taking the incorporated portion of the “governor’s answer,” together with the general allegation of the bill, a case of payment in satisfaction of the full costs by the United States, whatever the effect of that might have been had it been proved.
It is also objected that these proceedings doubled the assessments ; that the assessing power was limited to but one assessment, and when that was done the power was exhausted; consequently the subsequent assessment was a nullity. But from what we have said there does not appear to have been two assessments for the same work, and the objection therefore must fail because based upon an erroneous statement of fact.
The third ground of complaint was that the complainant company was not liable to be assessed upon its leasehold; that the law subjecting the adjoining property to assessment, had reference to the ownership in fee, and not to a leasehold. But the statute declaring that the property of this corporation “shall be subject to assessment and taxation for all District and municipal purposes,” also declares that this ninety-nine years lease “shall be taken and considered as a determinable fee.” The meaning of that is, that fm^TEe^)fifpMekbra^sFs"smenTliñd"taxation the company’s ownership in this property stands on the same footing with the ownership in fee of all property adjoining the line of improvement. It does not matter what the case may be at common law, it is enough that the legislature has said that for the purposes of taxation (for we take the two acts to *422 gether) it shall be regarded as that class of property which is assessable and subject to assessment.
This corporation, then, holds a property liable to be assessed, and liable to be sold in case of non-payment, where improvements are made along this street, and as it appears that the assessment made against it was not for the work which was paid for by the United States — in other words that there was no double assessment — the debt is consequently not discharged. It is true enough that where a stranger comes in and undertakes to discharge the very debt of a debtor it is discharged; so, too, where a stranger makes a payment of taxes for the purpose of satisfying them, they are satisfied. But that does not appear to be, in matter of fact, the case before us.
The result, then, is that this company is liable for these taxes. Nevertheless, we are asked, even in that event, to restrain the collection of them on the ground that they were excessive. Well, if the tax is excessive there is a remedy at law, and, in addition, there was a special remedy provided by the statute for having the excess corrected. The complainant cannot, therefore, come into a court of equity for an injunction.
But whatever its rights may be in that respect, it certainly cannot come here and ask us to enjoin against the whole tax without having paid that part which it admits would be due, if anything at all is due. We have held that something appears to be due, and it admits what the amount of it would be, if it be due at all. Certainly, then, it cannot seek equitable relief here without having paid what is due — what is in fact admitted to be due. We think the demurrer on the part of the District should be sustained.
A certain embarrassment, however, was thought to be presented to us in the state of the record. The Commissioners then holding office did not answer, and decrees were taken against them pro confesso, and afterwards those decrees were made absolute. So that the persons who represented the District and whose business it was to see to the collection of this tax, had their hands tied up by an abso *423 lute decree while the District itself stood demurring to the bill. It was said that the District is an immaterial party and might have been left out. But the District is the very party whose business it is to collect these taxes, although they may be handed over and put into the National Treasury. It is the very party to resist this bill. The Commissioners are but the instrumentality. So that we find no embarrassment in the fact that those decrees were made absolute. That was a part of the law of the case, and the case was in court completely, noth withstanding those decrees were made absolute against those particular persons. It is true that the decrees went further and enjoined their successors in office, but the case is in our hands and cannot be taken out of them by any such accident as that. It strikes us as probably an oversight that those decrees ever came to be made absolute in such a state of the case, and it would seem to suggest to us the propriety of watching very closely in regard to whom we should make a decree' pro confesso absolute.
We affirm the decree below sustaining the demurrer and dismissing the bill.